## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | |
|---|---|
| HENRY ALVAREZ-CUEVAS | CIVIL ACTION NO.  6:10-cv-0341 |
| FED. REG. #20780-069 | |
| VS. | SECTION P |
| | JUDGE DOHERTY |
| SHAREHOLDERS, PINE PRAIRIE | |
| CORRECTIONAL CENTER, ET AL. | MAGISTRATE JUDGE HANNA |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Henry Alvarez-Cuevas, proceeding *in forma pauperis*, filed the instant civil complaint on January 29, 2010.[1]  Plaintiff is a prisoner in the custody of the Federal Bureau of Prisons.  When he filed this suit he was incarcerated at the United States Penitentiary, Atlanta, Georgia, however, he complained that he was denied appropriate medical care and treatment by corrections officials at the Pine Prairie Corrections Center (PPCC), Pine Prairie, Louisiana, who transferred him to the Federal Corrections Institute (FCI), Beaumont, Texas and lost his medical records.

He sued the prison, its  "shareholders", Warden Hams, Associate Warden Viator, and the Medical Staff.  He  prayed for prospective injunctive relief – treatment for his medical condition, and, for compensatory damages. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

---

[1] Plaintiff filed his original complaint in the United State District Court for the Eastern District of Louisiana. It was transferred here on March 1, 2010. [See Docs. #4 and 5]

*Background*

Plaintiff has filed an original complaint along with various exhibits [Docs. #1 and 1-1] and a Memorandum In Opposition to the Defendants' Motion to Dismiss and exhibits. [Doc. 17] The pleadings and exhibits present the following chronology of events:

On August 7, 2002, plaintiff pled guilty to hostage taking and aiding and abetting unlawful possession of a firearm during the commission of a violent crime in the United States District Court for the District of Puerto Rico. [*United States v. Alvarez-Cuevas*, No. 3:00-cr-00882 at Doc. #109] The original sentences were vacated on appeal (*United States v. Alvarez-Cuevas*, 415 F.3d 121 (1st Cir. 2005)), and on December 6, 2005 he was re-sentenced to serve consecutive sentences of 78 and 84 months. [No. 3:00-cr-00882 at Doc. # 208]

On some unspecified date he was incarcerated at PPCC.[2] On March 24, 2008, plaintiff submitted a grievance to the corrections staff at PPCC. He complained that he had been waiting three weeks for a medical evaluation by "another doctor from outside this facility." On April 1, 2008 plaintiff was advised that staff were taking steps necessary to obtain the evaluation and appointment he requested. [Doc. #17, pp. 7-8]

On March 27, 2008 plaintiff was charged with destroying property at PPCC after he broke the sprinkler head in his cell. [Doc. #17, pp. 10-11]

On April 8, 2008, he was taken to the Emergency Department at the L.S.U. Health Sciences Center where he was examined by Dr. Peter Chu. Plaintiff contends that Dr. Chu wrote orders directing the plaintiff to have an endoscopy, a colonoscopy, and surgery. Thereafter, the defendants

---

[2] Since he was incarcerated at PPCC after his federal conviction and the imposition of sentence, it is assumed that plaintiff was a convict at all times relevant to this inquiry.

"... somehow misplaced the medical orders and records the doctor prescribed for the Plaintiff, and instead of going through the proper procedures of getting another copy of the prescribed medical orders [they] put Mr. Alvarez-Cuevas in segregation with orders to be transported to another facility." [Doc. #1, p. 2]

On April 17, 2008 plaintiff was charged with another disciplinary rules violation when he refused to obey orders to leave the recreation yard. [Doc. #17, p. 14] On May 6, 2008 he was charged with assaulting an officer at PPCC. [Doc. #17, p. 15] On May 19, 2008 he was charged with refusing to obey the directions of a corrections officer at PPCC. [Doc. #17, p. 17] On May 26, 2008 he was found guilty of the offense by the Disciplinary Hearing Officer. [Doc. #17, pp. 18-19]

Plaintiff was transferred to FCI Beaumont sometime thereafter. On July 10, 2008 petitioner submitted a Request for Administrative Remedy requesting a copy of the lost medical records.  On July 31, 2008, the medical records department at FCC Beaumont submitted a request for plaintiff's medical records to PPCC. [Doc. #1-1, p. 7] Neither request resulted in the production of the records sought by plaintiff.

On July 2, 2009 plaintiff submitted an "Inmate Request to Staff" complaining of rectal pain and bleeding and requesting treatment. On July 7, 2009, the prison staff responded, "A review of your record revealed you were seen 7/6/09 by [Physicians Assistant] and prescribed stool softener. You were even evaluated by physician." [Doc. #1-1, pp. 9-10]

On July 8, 2009 plaintiff submitted an informal administrative remedy request complaining of pain and other difficulties associated with his bowels and requesting colonoscopy, endoscopy, and surgery. [Doc. #1-1, p. 11] On August 20, 2009 prison staff responded, "... you were evaluated by the physician and [physicians assistant] for your medical concern.  At this time there is no medical

3

indication for a medical procedures (endoscopy and colonoscopy)." [Doc. #1-1, p. 12]

On July 9, 2009 plaintiff submitted a second Request to Staff requesting them to document the fact that his medical orders for colonoscopy, endoscopy, and surgery were not in his medical records. [Doc. #1-1, p. 10]

On July 21, 2008 plaintiff was examined by the Medical Staff at FCC Beaumont; all three hemoccult cards tested positive for blood in plaintiff's stool. He was provided medication for the condition. [Doc. #17, p. 23]

Sometime prior to September 18, 2009 plaintiff submitted a "Claim for Damage, Injury, or Death" to BOP's South Regional Office demanding compensation for the loss of his medical records and the resulting discomfort. [Doc. #1-1, pp. 4-5] On September 18, 2009 the BOP responded and advised plaintiff that PPCC "... is not operated by the Bureau of Prisons or the United States and its staff members are not employees of the Bureau of Prisons or the United States..." and therefore his tort claim was rejected. [Doc. #1-1, p. 3]

On October 16, 2009 plaintiff wrote a letter to PPCC notifying them of his claim facility for damages resulting from the loss of his medical records. [Doc. #1-1, pp. 1-2]

Meanwhile, on September 8, 2009 plaintiff submitted a Request for Administrative Remedy again complaining of abdominal pain. He also noted the prior orders for diagnostics and requested a re-evaluation. [Doc. #1-1, p. 13] On October 7, 2009, the Warden at FCI Atlanta responded,

> An investigation into this matter revealed you were seen and evaluated by a medical doctor for your abdominal pain and constipation on April 27, 2009. At that time, you did not report blood in your urine. You stated while at ICE Detention, a physician told you that you needed an EDG/colonoscopy for your rectal problem. You also reported stomach discomfort after eating and stated that you were taking stool softeners. Based on your complaints and medical doctor's findings, comprehensive blood work and an abdominal (flat and upright) x-ray were ordered. The x-ray of

4

your abdomen was performed on May 7, 2009; which showed no findings. The comprehensive blood work showed no positive findings. On May 7, 2009, you were seen and evaluated by the mid level practitioner for complaints of constipation. Your were prescribed Bisacodyl E.C. 5 mg Tablet. On July 7, 2009, you were seen and evaluated by the mid level practitioner for complaints of constipation. You were prescribed Disacodyl E.C. 5 mg, Docusate Sodium 100 mg capsule, and Acetaminophen tablet 500 mg to take for abdominal discomfort. On July 21, 2009, you were seen and evaluated by the mid level practitioner and medical doctor. A rectal exam and hemoccult smear tests were performed during this visit. There was no fecal occult blood noted. There was also no evidence of black stool on glove, no internal or external hemorrhoids noted or evidence of a prolapsed rectum or fistula.

Our medical staff will continue to monitor and provide medical care ... Your request to have an endoscopy or colonoscopy is not medically indicated at this time. [Doc. #1-1, p. 14]

Plaintiff appealed to the Regional Office of the BOP on October 29, 2009. [Doc. #1-1, p. 15]

On December 7, 2009 the Regional Director denied his appeal and noted

A review of your medical records revealed you were evaluated on November 12, 2009, by the Contract Physician for complaints of rectal pain.[3] You informed your provider that while in the custody of Immigration and Customs Enforcement (ICE) you were evaluated by an outside physician who recommended colonoscopy; however, you were transferred before the procedure was performed. You further claimed you occasionally notice blood in your stools and your pain worsens when defecating. Upon conducting a comprehensive evaluation, the Contract Physician observed blood in your stools and noted a reddened anus, shallow ulcerations in mucosa and the presence of hemorrhoids. Your most recent laboratory studies were also reviewed, which were negative for Helicobacter pylori (H. pylori). Based on your clinical presentation, the Contract Physician renewed your prescription for Calcium Polycarbophil 625 mg. tablets and ordered additional laboratory studies to further diagnose your condition. Your provider did not recommend a colonoscopy or endoscopy at that time. You were instructed to return to the clinic as need.
Health Services staff are aware of your medical history and will continue to assess, evaluate, and monitor treatment for your condition... [Doc. #1-1, p. 16]

Plaintiff submitted his appeal to the BOP's Central Office on December 29, 2009. [Doc. #1-

---

[3] Plaintiff provided a copy of the "Clinical Encounter" notes for November 12, 2009. Those observations, findings, and conclusions are as described in the Regional Office response to plaintiff's appeal. [Doc. #1-1, pp. 18-21]

1, p. 17]

While that appeal was apparently pending, he filed the instant complaint in the United States District Court for the Eastern District of Louisiana on January 29, 2010. As noted above, that Court transferred the matter to this Court on February 23, 2010. [Docs. #4-5]

While this matter was on initial review pursuant to 28 U.S.C. §§1915 and 1915A, the defendants filed a Motion to Dismiss. [Doc. #12] Plaintiff filed an opposition to that motion and requested Summary Judgment. [Doc. #17]

### *Law and Analysis*

### *1. Screening*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact.  *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).  A civil rights complaint fails to state a claim upon which relief can be granted if  it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as

frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).  Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has not properly effected service of process, nevertheless, the defendants have responded to his complaint by filing a Motion to Dismiss claiming that the pleadings fail to state a claim for which relief may be granted.  [Doc. #12] The standards for dismissal pursuant to §§1915 and 1915A are the same as the standards for dismissal pursuant to a Motion to Dismiss since the language of § 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6). *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998).

## *2. Limitations*

The district court is authorized to dismiss a claim as frivolous "it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations."  *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993).  A district court may raise the limitation period *sua sponte*. See *Harris v.*

*Hegmann,* 198 F.3d 153 (5th Cir. 1999).

The Supreme Court has held that the statute of limitations for a §1983 action is the same as the statute of limitations in a personal injury action in the state in which the claim accrues. *Wilson v. Garcia*, 471 U.S. 261, 279-280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1984). However, the date of accrual for a §1983 claim is a question of federal law. *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995); *Longoria v. City of Bay City*, 779 F.2d 1136 (5th Cir. 1986).

Federal law is clear: "... the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski*, 51 F.3d at 516, quoting *Vigman v. Community National Bank and Trust Co*., 635 F.2d 455, 459 (5th Cir. 1981). The plaintiff's knowledge of the injury depends on two elements: (1) the existence of the injury; and (2) the connection between the injury and the defendant's actions. See *Piotrowski*, 51 F.3d at 516. A plaintiff need not realize that a legal cause of action exists but only that the facts support a claim. See, *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

Plaintiff sues various corrections officials and others associated with PPCC and faults them in two ways: (1) they failed to follow through with the procedure recommended by Dr. Chu, and, instead, transferred him to the FCI Beaumont; and, (2) they lost or misplaced the medical records from Dr. Chu and therefore were unable to provide Dr. Chu's recommendations to the officials at FCI Beaumont.

The record is not entirely clear, however, the available evidence establishes that plaintiff was transferred from PPCC to FCI Beaumont sometime prior to but certainly not later than July 21, 2008. [See Doc. #17, p. 23 which establishes that plaintiff was examined at FCI Beaumont on July

21, 2008] FCI  Beaumont attempted to obtain plaintiff's medical records from PPCC on July 31,

2008 [Doc. #1-1, p. 7] It must be assumed that they became aware of the loss of the records shortly

after their request.  Thus, plaintiff was aware of the "injury" and the defendants' connection to his

injury by August 2008 at the latest.  Plaintiff's claims against PPCC and its personnel therefore

accrued in August 2008 following plaintiff's transfer and the discovery that his records were lost.

The Fifth Circuit has approved application of Louisiana's one-year personal injury statute

of limitations provided by La. Civ.Code Ann. art 3492 in a § 1983 action. *Lavellee v. Listi*, 611 F.2d

1129 (5th Cir. 1980).  Since plaintiff's claims accrued at some point in time no later than August

2008, he had one year, or until August 2009 to file his federal suit.  Plaintiff's federal suit was filed

in January 2010,  and it is therefore clearly untimely.[4] Thus, to the extent that plaintiff seeks redress

under §1983 for the alleged violations of his constitutional rights by the corrections staff and others

associated with PPCC, those claims are clearly prescribed and dismissal on that basis is appropriate

and recommended.

### 3. Medical Care

Even if plaintiff's complaint was timely filed it would be subject to dismissal as frivolous

and for failing to state a claim for which relief may be granted. Medical care claims when asserted

by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of

cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the

defendant prison officials knew of and then disregarded an excessive risk to the plaintiff's health and

---

[4] It does not appear that plaintiff is entitled to equitable tolling. He did not make a formal demand against
PPCC until October 16, 2009 when he wrote a letter notifying them of his claim against the facility for damages
resulting from the loss of his medical records. [Doc. #1-1, pp. 1-2]

safety. *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994);
*Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

In other words, the plaintiff must show "deliberate indifference" on the part of the
defendants.  *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  "Deliberate
indifference" in this context means that: (1) the prison officials were aware of facts from which an
inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that
inference; and (3) the officials' response indicated that they subjectively intended that harm occur.
*Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. Such deliberate indifference has been
equated with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S.
825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994);  *Reeves v. Collins*, 27 F.3d 174 (5th
Cir.1994).

Thus, even "... the failure to alleviate a significant risk that [the official] should have
perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department
of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate
indifference cannot be inferred merely from a negligent or even a grossly negligent response to a
substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate
indifference encompasses only unnecessary and wanton infliction of pain repugnant to the
conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also
*Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

"[D]eliberate indifference is an extremely high standard to meet" and requires a showing that
"the officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him
incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any

10

serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)). Finally, disagreement with diagnosis and treatment cannot support a claim of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).

Here plaintiff contends that a physician ordered various diagnostic and therapeutic procedures in April 2008. He faults the PPCC defendants for failing to provide those procedures and for thereafter losing the orders which he claims would have allowed him to obtain the procedures following his transfer to FCI Beaumont. However, the record submitted by the plaintiff clearly establishes that he was examined by physicians and other health care providers following his transfer from PPCC to FCI Beaumont and thereafter to the Federal Detention Center in Atlanta.  In each instance physicians or health care providers concluded that endoscopy, colonoscopy, or surgery were not necessary under the circumstance.

Plaintiff, of course,  disagrees with the diagnosis and  treatment plan which was ultimately approved by physicians at the BOP facilities he was housed in after his transfer from PPCC.  The fact that a plaintiff disagrees with what medical care is appropriate or with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997); *Callaway v. Smith County*, 991 F. Supp. 801, 809 (E.D. Tex. 1998); *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *Mayweather, supra; Varnado v.  Lynaugh,* 920 F.2d 320, 321 (5th Cir.  1992) citing *Johnson v.  Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is

one of medical necessity, not of desirability.  The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act.  Prisoners are not constitutionally entitled to the best medical care that money can buy. *See Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992); *Woodall, supra.*  Merely alleging a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado*, 920 F.2d at 321. See, *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) (A disagreement with a doctor over the method and result of medical treatment does not require a finding of deliberate indifference).  Furthermore, the fact that plaintiff continues to suffer from pain is insufficient to establish that a constitutional violation has occurred. *Mayweather, supra*.  In short, plaintiff's medical care claim is frivolous.

### 4. Conclusion and Recommendation

Accordingly

**IT IS RECOMMENDED** that the Defendants' Motion to Dismiss [Doc. #12] plaintiff's civil rights complaint be **GRANTED** and that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted pursuant to the provisions of  28 U.S.C. §§1915(e)(2)(B)(i) and 1915A(b)(1) and Rule 12(b) of the Federal Rules of Civil Procedure;

**IT IS FURTHER RECOMMENDED** that plaintiff's Motion for Summary Judgment [Doc. #17] be **DENIED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond

to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).**

In chambers, Lafayette, Louisiana, August 10, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

13